UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD HARRINGTON,                           Case No. 20-10954

                        Plaintiff,           Paul D. Borman
v.                                           United States District Judge

COMMISSIONER OF SOCIAL                       Curtis Ivy, Jr.
SECURITY,                                    United States Magistrate Judge

                        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 23, 26)**

Plaintiff Donald Harrington ("Plaintiff") brings this action pursuant to 42

U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of

Social Security ("Commissioner") denying his applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the

Social Security Act (the "Act").  This matter is before the United States Magistrate

Judge for a Report and Recommendation on Plaintiff's motion for summary

judgment (ECF No. 23), the Commissioner's cross-motion for summary judgment

(ECF No. 26), Plaintiff's reply (ECF No. 29), and the administrative record (ECF

No. 17).[1]

---

[1] References to the administrative record are identified as "Tr."

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 23), **GRANT** Defendant's motion for summary judgment (ECF No. 26) and **AFFIRM** the Commissioner's decision.

## I.      DISCUSSION

### A.      Background and Administrative History

Plaintiff originally alleged his disability began on October 1, 2018 (Tr. 190). He later amended the alleged onset of disability date to May 1, 2016 (Tr. 297). He was 17 at the time of the amended onset date (Tr. 190). He filed an application for DIB on October 11, 2018 (Tr. 190) and an application for SSI on June 26, 2019 (Tr. 297). He alleges disability as a result of attention deficit disorder ("ADHD"), bipolar disorder, depression, oppositional defiant disorder ("ODD"), asthma, psychosis with substance abuse, and anxiety (Tr. 315). His applications were denied on April 25, 2019 (Tr. 82).

Following denial of his applications, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), held November 6, 2019. Plaintiff, represented by attorney Sarah Schairbaum, testified (Tr. 40-52), as did Plaintiff's adoptive mother (Tr. 53-59), and vocational expert ("VE") Michael Rosko (Tr. 60-64). On December 16, 2019, ALJ Anthony R. Smereka found that Plaintiff was not disabled (Tr. 10-23). On February 18, 2020, the Appeals Council declined to

review ALJ Smereka's determination (Tr. 1-3).  Plaintiff filed suit in this Court on
April 17, 2020.

### B.      Plaintiff's Medical History

Because Plaintiff does not argue the ALJ erred in assessing his physical
conditions, the Court's discussion of the medical evidence is limited to the alleged
psychological limitations.

In July 2011, Kimberley P. Heinrich, Ph.D., performed a neuropsychological
examination of Plaintiff, noting diagnoses of ADHD, anxiety, mood disorder, and
ODD (Tr. 624).  Dr. Heinrich noted as follows: "[Plaintiff's] adoptive mother
reported that a pediatric neurologist 'reportedly evidenced lingering delays related
to fetal alcohol effects'" but that Plaintiff "was not felt to meet [the] full diagnostic
criteria for fetal alcohol syndrome" (Tr. 620).  Plaintiff's mother reported that he
received Individualized Education Program ("IEP") while in school (Tr. 621).
Plaintiff's intellectual ability was placed in the average range with "low average"
attention and working memory skills (Tr. 622-623).   He exhibited mild depressive
symptoms (Tr. 624).  Dr. Heinrich noted that Plaintiff processed information "at a
slower rate" (Tr. 626).

November 2015 intelligence testing by psychiatrist Nakita Natala, M.D.,
showed average overall intellectual ability with low average working memory
skills and processing speeds in the borderline range (Tr. 1582).  She noted

3

"possibly emerging bipolar illness" (Tr. 1582). She also noted possible fetal alcohol spectrum disorder (Tr. 1583).

In September 2018, Plaintiff's mother applied for legal guardianship (Tr. 1356). Plaintiff's father referred him for emergency treatment for depression characterized by explosiveness, irritability, poor concentration, and psychomotor retardation (Tr. 1556). Plaintiff's father reported that in the prior week, Plaintiff "expressed homicidal ideation" toward one of his housemates at the sober living house where he resided, resulting in Plaintiff's expulsion (Tr. 1356, 1566). Plaintiff was noted to have been in the process of stopping substance abuse and was involved in a "tumultuous relationship" with his girlfriend (Tr. 1567). Plaintiff exhibited a logical thought process, orientation, and concentration (Tr. 1568). He was admitted for inpatient treatment for suicidal and homicidal ideation (Tr. 1560). He admitted to a history of abusing methamphetamine, alcohol, "mollies," Adderall, mescaline, powder and crack cocaine, heroin, PCP, mushrooms, marijuana, Robitussin, Percocet, Vicodin, Oxycodone, and methamphetamines (Tr. 1347). Plaintiff was deemed "in the pre-contemplation stage of change relative to his substance abuse" (Tr. 1347).

November 2018 records note there were "no behavior concerns" at Plaintiff's workplace (Tr. 1563). The following month, Plaintiff was admitted for residential treatment following a "three-day bender" (Tr. 584, 591). A discharge

summary from the next month states that Plaintiff moved to a "three-quarter house" and planned to continue individual and group therapy (Tr. 590). January and April 2019 records by Sarah Scantamburto, P.A., note a normal mood, attitude, affect, speech, memory, thought process, concentration, and judgment (Tr. 1184-85, 1188, 1273-74).

In March 2019, Jocelyn Markowicz, Ph.D., performed a consultative psychological examination on behalf of the SSA, noting that Plaintiff currently worked as a bus boy (Tr. 599). Plaintiff reported he previously worked as a dishwasher for one year and that the job ended when he moved (Tr. 599). He stated that prior to his employ as a dishwasher, he worked for two-and-a-half years at Meijer as a stocker (Tr. 599). Dr. Markowicz observed that Plaintiff was polite and cooperative with a normal affect and full orientation (Tr. 600). He demonstrated a normal memory (Tr. 601). Dr. Markowicz noted a "good" prognosis, "provided that he continue[d] to abstain from alcohol and drug usage" (Tr. 602). She found that Plaintiff's diagnosis of depression did not require supervision "to engage in simple and complex tasks" (Tr. 603).

August 2019 health care records, noting that Plaintiff was then eight months sober, show normal speech, an appropriate affect, and a "linear thought process" (Tr. 1569). Health care records from September 2019 show normal attitude, mood, affect, psychomotor activity, and average grooming (Tr. 1616). Plaintiff also

displayed normal speech, fund of knowledge, thought process, and thought content

(Tr. 1617).  His concentration, impulse control, and judgment were deemed

adequate despite diagnoses of bipolar disorder, depression, and ADHD (Tr. 1617-

1618).

In October 2019, Amanda DeSantis, M.A., and Douglas Park, Ph.D., of the

University of Detroit Mercy Psychology Clinic, performed a psychological

evaluation in connection with Plaintiff's application for DIB and SSI (Tr. 1748).

Plaintiff was currently living at Lighthouse (Tr. 1748).  He had a three-year-old

child from a previous relationship, but did not have legal custody due to a history

of drug use (Tr. 1748).  Plaintiff reported that his diagnoses included fetal alcohol

syndrome (Tr. 1749).  Plaintiff reported the use of marijuana from the age of 12;

the use of harder drugs at 15; and cocaine at the age of 18 (Tr. 1750).  He reported

he had been sober for nine months (Tr. 1750).  Plaintiff reported that he lost a job

as a dishwasher one month earlier after "calling in too many times" (Tr. 1750).  He

noted he had been able to keep only two jobs (out of "a ton" of previous jobs) for

"an entire year" (Tr. 1750).

Plaintiff demonstrated average to above average intelligence in verbal

comprehension but below average intelligence in working memory (Tr. 1751).

Examiners noted that Plaintiff's mother "may see [Plaintiff] more negative[ly] than

he really is" and was "purposely attempting to make [him] appear more negative

than he really is" (Tr. 1752). The report further reveals Plaintiff was likely "in a manic episode on the day of testing," which accounted for his psychological presentation (Tr. 1753). The report concluded Plaintiff's mother "should continue to serve as [Plaintiff's] legal guardian as it does not appear that [he] is capable of managing his healthcare, legal care, or financial obligations on his own" (Tr. 1753). The report noted Plaintiff "has never successfully worked full-time" and "[e]ven in part-time positions, he has not been able to consistently and adequately complete his tasks. His psychological disorders seem to hamper his ability to work, both in the past, and in the present" (Tr. 1753).

Counseling records from the same month depict Plaintiff directed profane language at three-quarter house staff and was warned that abusive conduct would result in discharge (Tr. 1763). Plaintiff exhibited a stable mood with appropriate affect (Tr. 1763). The same month, P.A. Scantamburlo completed an assessment of Plaintiff's functional abilities, finding marked and extreme impairment in the areas of understanding and memory; adaptation; concentration and persistence; and social interaction (Tr. 1642-1643). She also found Plaintiff would experience medication side effects which would affect his work performance and that he would be expected to miss work about three times a month due to psychological symptoms (Tr. 1644).

7

C.    **The Hearing Testimony**

1. **Plaintiff**

 Plaintiff offered the following testimony.

He had not consumed alcohol or illicit drugs since December 17, 2018 (Tr. 40).  Prior to that time period, he used alcohol and methamphetamines daily (Tr. 41).  Plaintiff obtained a high school diploma (Tr. 42).  After being suspended in ninth grade for disruptive behavior, he took online classes exclusively for his last three years of high school (Tr. 43).

Plaintiff's work history included part-time work at Meijer in 2016 (Tr. 44). More recently, he worked briefly in two other positions before being discharged for poor performance (Tr. 45).  He attributed his poor performance to his former substance abuse (Tr. 46).  He currently lived in a three-quarter house and received outpatient treatment (Tr. 46).  He also attended three Narcotics Anonymous ("NA") meetings each week (Tr. 48).

Plaintiff opined he was unable to work, noting that he recently lost a job as a dishwasher due to his failure to complete tasks in a timely manner (Tr. 48-49).  He noted that at the time of his discharge he was depressed and distracted by the need to focus on his recovery from substance abuse (Tr. 52).  Due to feelings of being "overwhelmed," he would have been unable to work more than 25 hours a week at Meijer (Tr. 50).  He experienced interpersonal conflicts at work which he coped

8

with by avoiding other individuals or leaving work (Tr. 51).  He had difficulty following multitask instructions (Tr. 51).

### 2.  Plaintiff's Mother

Plaintiff's adoptive mother offered the following testimony.

She was appointed Plaintiff's legal guardian one year prior to the hearing (Tr. 53).  Plaintiff experienced problems managing appointments, paying rent, budgeting, and taking medication (Tr. 53).  She organized Plaintiff's appointments, provided transportation, and discussed medication changes with health care providers (Tr. 53-54).  She helped him organize a budget (Tr. 54).  Plaintiff was easily distracted and impulsive (Tr. 55).   He was suspended from school in ninth grade for selling drugs (Tr. 56).  Plaintiff's mother noted he had been "disruptive in class" since kindergarten (Tr. 56).  She opined that Plaintiff's "dreams and aspirations" were not "always realistic" (Tr. 57).  She further opined that even if Plaintiff had not used alcohol or illicit drugs, he would be unable to perform fulltime work due to the conditions of depression and bipolar disorder (Tr. 57-58).

### D.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, ALJ Smereka found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of May 1, 2016 despite part-time work in 2016, 2017, and 2018 (Tr. 13).  At **Step 2**, the ALJ found

Plaintiff had the following severe impairments: substance abuse, ADHD, bipolar disorder, anxiety, asthma, and neuropathy (Tr. 13). At **Step 3**, the ALJ found Plaintiff met Listings 12.04 (depression) and 12.06 (anxiety) (Tr. 13); 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04, 12.06.

However, the ALJ found if Plaintiff "stopped substance use," none of the severe impairments would meet or medically equal a listed impairment (Tr. 14). He found that absent substance use, Plaintiff experienced no more than moderate psychological limitation (Tr. 15). **Between Steps 3 and 4** of the sequential process, the ALJ determined Plaintiff had the following Residual Functional Capacity ("RFC"):

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following exceptions: he should not be exposed to hazards, including work at unprotected heights or around dangerous moving machinery; there should be no climbing of any ladders, ropes, or scaffolds; there should be no driving in the course of employment; he has the ability for unskilled work, meaning the ability to understand, carry out, and remember simple instructions, to respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a routine work setting; he should not work with the general public; he should have only occasional contact with coworkers and supervisors; and there should be no fast paced production pace work, where the pace is set by others (such as an assembly line or conveyor belt work)

(Tr. 16). At **Step 4**, the ALJ determined that even if Plaintiff stopped substance

use, he was unable to perform any past relevant work (Tr. 21).  At **Step 5**,

considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined there were jobs that exist in significant numbers in the national

economy that Plaintiff could perform, specifically, the unskilled jobs of janitor,

packager, and inspector (Tr. 22).  The ALJ therefore concluded that Plaintiff had

not been under a disability, as defined in the Social Security Act, since the

amended alleged onset date of May 1, 2016 (Tr. 23).

### E.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[2]  The

_____

[2] Citations to the regulations or Social Security Rulings are to those effective
on the date of the application for disability benefits or the ALJ's decision, where
appropriate, unless indicated otherwise.

Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

### F.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## G.    Analysis

Plaintiff disputes the determination that drug addiction and alcoholism ("DAA") was the "but for" reason for his disability. (ECF No. 23) He argues (1) despite the admitted substance abuse, he was disabled partially as a result of fetal

alcohol syndrome, not DAA; (2) aside from the substance abuse, the conditions of depression, bipolar disorder, and anxiety met Listings 12.04 and 12.06; and (3) the ALJ erred by failing to mention Dr. Park's October 2019 statement that the psychological conditions hindered the ability to work.[3]

### 1.   DAA

Plaintiff disputes the determination that absent substance abuse, he was not disabled.  (ECF No. 23, PageID.1856).  He asserts his disability resulted from fetal

---

[3] The Court has also considered the arguments set forth in Plaintiff's reply brief.  (ECF No. 29).  He cites *Robinson v Saul*, No. CV 20-00263-ACK-WRP, 2021 WL 1108582, at *5 (D. Haw. March 23, 2021) (*quoting Nelson v. Saul*, 413 F. Supp. 3d 886, 912–13 (E.D. Mo. 2019) ("'ALJ must take on the difficult task of untangling the warp threads of the claimant's substance abuse from the woof threads of the claimant's other impairments in order to examine the hypothetical cloth that remains.'")).  In *Robinson*, the court remanded the case on the basis that the ALJ failed to delineate the effects of "non-substance use" mental impairments from the effects of ongoing substance use.  *Id.* at *10.  In contrast here, the ALJ was able to draw on records from a relatively long period of sobriety to show that the non-substance use impairments were not disabling.  *See Robinson* at *5 (*citing* SSR 13-2 at *12) ("[I]n cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what if any medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated.").  Plaintiff also faults the ALJ for finding that Dr. Markowicz's conclusion of non-disability level impairment persuasive while rejecting her accompanying conclusion that the evidence was insufficient for diagnoses of bipolar disorder, ADHD, ODD, and anxiety.  (ECF No. 29, PageID.1913-1914).  However, it is well settled that an ALJ is permitted to draw from the record as a whole in crafting the RFC.  *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-728 (6th Cir. September 5, 2013) (rejecting contention ALJ was "bound" by one medical opinion - ALJ "properly based her RFC determination on all the evidence of record").  Likewise here, ALJ permissibly drew on diverse and sometimes contradictory portions of the record in crafting the RFC.

alcohol syndrome, which is explicitly excluded from the conditions to be considered in making a DAA determination.  In turn, Defendant contends Plaintiff's possible limitations resulting from fetal alcohol syndrome did not prevent the ALJ from applying the DAA analysis.  (ECF No. 26, PageID.1888).

Under the Social Security Act, "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction" is "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).  "When the ALJ determines that an individual is disabled and the record demonstrates a history or drug or alcohol abuse, the ALJ must determine whether the individual's substance abuse is a contributing factor to the determination of disability and whether the individual would still be disabled if the substance abuse stopped." *Blaylock v Comm'r of Soc Sec*, 947 F. Supp. 2d 826, 839 (N.D. Ohio 2013) (*citing* 20 C.F.R. §§ 404.1535(a), 416.935(a)).  "If the ALJ determines that a claimant would still be disabled if the substance abuse stopped, the ALJ must conclude that the substance abuse was not a contributing factor material to the determination of disability and should award benefits." *Id.* (*citing* 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii)).  "But if the ALJ determines that a claimant would not be disabled if the substance abuse stopped, the ALJ must conclude that the substance abuse was a contributing factor material to the determination of disability and should not award benefits." *Id.* (*citing* 20 C.F.R. §§

404.1535(b)(2)(i), 416.935(b)(2)(i)).  "The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find a claimant disabled if he or she stopped using drugs or alcohol."  SSR 13-2p, 2013 WL 621536 at *4 (Feb. 20, 2013).

Citing SSR 13-2p, Plaintiff argues the ALJ erred because the condition of fetal alcohol syndrome is explicitly excluded from the conditions to be analyzed using the DAA analysis (ECF No. 23, PageID.1858) (*citing* SSR 13-2p, at *3). Plaintiff is correct the fetal alcohol syndrome is excluded from the conditions where the DAA analysis should be applied.  SSR 13-2p, at *3.  However, this argument fails for multiple reasons.  First, Plaintiff fails to identify an actual diagnosis of fetal alcohol syndrome by an acceptable medical source.  A July 2011 neuropsychological evaluator noted the report of Plaintiff's mother that an earlier source found Plaintiff did not meet the "full diagnostic criteria for fetal alcohol syndrome" (Tr. 620).  Likewise, in November 2015, an examining source found only *possible* fetal alcohol spectrum disorder (Tr. 1583).  Thus, Plaintiff has not established that the condition is a medically determinable impairment.

Second, even assuming Plaintiff experienced fetal alcohol syndrome, the existence of such an impairment does not prevent the ALJ from finding that he also

experienced a substance use disorder as the condition is defined by SSR 13-2p.[4]

Aside from Plaintiff's apparent exposure to alcohol *in utero,* the medical transcript

supports the finding that DAA, based on the later, voluntary substance abuse, is a

medically determinable impairment (Tr. 584, 591,1347).  The ALJ correctly noted

that Plaintiff had been receiving treatment for substance abuse since the alleged

May 1, 2016 onset of disability (Tr. 14).  He observed that Plaintiff "had multiple

incarcerations while abusing substances" and admitted to "noncompliance with

treatment and regular substance abuse" (Tr. 14).  At the administrative hearing,

Plaintiff admitted to long-term substance use.  As discussed in Section B., *above,*

these findings comport with the Court's own review of the evidence.  Accordingly,

the ALJ's application of the DAA analysis to the facts of this case is not only well

supported by the transcript but adequately explained.

> 2.  Listings 12.04 and 12.06

In his second argument, Plaintiff contends that even if the ALJ did not err in

applying the DAA analysis, his psychological impairments, absent the substance

abuse, rendered him disabled.  (ECF No. 23, PageID.1860).  Defendant argues that

substantial evidence supports the ALJ's finding that Plaintiff did not experience

---

[4] Under SSR 13-2p, a finding that DAA is a medically determinable impairment must be supported by objective medical evidence "signs, symptoms, and laboratory findings" from an acceptable medical source.  *Id.* at *10.

more than moderate psychological impairment after ceasing substance abuse. (ECF No. 26, PageID.1890).

Consistent with the requirements of the DAA analysis, the ALJ found that when the effects of substance use were considered, Plaintiff experienced marked limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace, and adapting or managing himself (Tr. 13). However, the ALJ found that when Plaintiff "stopped substance use," he experienced no more than moderate limitation in any of the above areas (Tr. 15). He also found that Plaintiff had greater than "a minimal capacity to adapt to changes in his environment" (Tr. 15) (citing Listings 12.04 and 12.06).

To medically equal Listings 12.04 (Depressive, bipolar, or related disorders), or 12.06 (Anxiety or obsessive-compulsive disorder), under the "B Criteria" for both Listings, Plaintiff was required to establish one extreme limitation or two marked limitations in the following areas:

1. understand, remember, or apply information;
2. interact with others;
3. concentrate, persist, or maintain pace;
4. adapt or manage oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 1206.[5]

---

[5] Plaintiff's counsel cites Listing 12.03 (Schizophrenia Spectrum and other psychotic disorders) twice in her brief but it is unclear whether she intends to

Alternatively, Plaintiff argues that he meets the "C Criteria" under Listings

12.04 and 12.06 which requires evidence of the following:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); *and*

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

The ALJ's finding that Plaintiff experienced no more than moderate

psychological limitation when not engaged in substance use is well supported by

the record. As to understanding, remembering, or applying information, the ALJ

found "intact recent and remote memory, intact fund of knowledge, normal thought

processes, normal thought content, and adequate impulse control and judgment"

(Tr. 15). The record reveals Plaintiff began an extended period of sobriety in

December 2018. January and April 2019 records by PA Scantamburlo note a

normal mood, attitude, affect speech, memory, thought process, concentration, and

judgment (Tr. 1184-85, 1188, 1273-74). Likewise, August 2019 records providing

Plaintiff was eight months sober show normal speech, an appropriate affect, and a

"linear thought process" (Tr. 1569). September 2019 records show normal

---

argue that Plaintiff experienced a psychotic disorder (absent substance use) along with depression, bipolar disorder, and anxiety. In any case, the B and C Criteria for Listings 12.03, 12.04, and 12.06 are identical. The finding that Plaintiff did not meet the C Criteria under Listings 12.04 and 12.06 would apply to Listing 12.03 as well.

attitude, mood, affect, psychomotor activity, and average grooming with normal speech, fund of knowledge, thought process, and thought content (Tr. 1616-1617).

The same records support the ALJ's finding of no more than moderate limitation in interacting with others or in concentration, persistence, or pace (Tr. 15). The ALJ noted that the post-substance use records showed a normal mood, behavior, affect, thought processes, thought content, adequate impulse control, judgment, attention, and concentration (Tr. 15). As to the ability to adapt or manage oneself, the ALJ relied on the same treatment findings, adding that post-substance use, Plaintiff appeared to be taking responsibility for his earlier behavior (Tr. 15). As to the C Criteria, the ALJ noted that the record did not establish Plaintiff had only "a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life" (Tr. 15). The ALJ cited a report from a March 2019 consultative examination by Dr. Jocelyn Markowicz showing intact insight, good judgment, and intact remote, recent, and immediate memory (Tr. 17). The ALJ cited Dr. Markowicz's "good prognosis" as long as Plaintiff "continued to abstain from alcohol and drug usage" (Tr. 17).

Plaintiff's argument that other portions of the record support the conclusion he was disabled even when he did not engage in substance use does not warrant a different result. While Plaintiff notes that October 2019 intelligence testing showed low average scores in concentration and memory, he does not show how

"low average" scores would translate into "marked" *e.g.* "serious" deficiencies[6]

(Tr. 1751).  Plaintiff's argument on this point is also undermined by his attorney's

erroneous and repeated statements that he expressed homicidal ideation toward one

of his housemates during the period of sobriety.  (ECF No. 23, PageID.1863, 1868,

1873) (ECF No. 17-18, PageID.1841).  While Plaintiff's counsel maintains  the

date of the incident was September 2019, the transcript indicates  the incident

occurred in September 2018 – well before the period of sobriety beginning in

December 2018 (Tr. 1356, 1566).  Plaintiff's citation to the September 2018

records supports rather than undermines the ALJ's determination of non-disability

absent substance abuse.  In contrast, the actual September 2019 records show

normal attitude, mood, affect, psychomotor activity, and average grooming (Tr.

1616).  While October 2019 records show that Plaintiff swore at the staff at his

three-quarter house and was warned that abusive conduct would result in

discharge, the apparently isolated incident does not invalidate the ALJ's finding of

no more than moderate limitations absent substance use.  Moreover, counseling

records detailing Plaintiff's account of the incident note that he exhibited a stable

mood and appropriate affect (Tr. 1763).

---

[6] Plaintiff cites other portions of Dr. Park's October 2019 findings to support
the finding  the psychological limitations, standing alone, establish marked
limitation.  Because Dr. Park's findings are the entire basis of Plaintiff's third
argument, they are discussed in greater detail below.

Further, Plaintiff's contention the ALJ improperly relied on "check-the-box" evidence to support the non-disability finding appears to be based on caselaw stating that medical *opinions* based on check lists are less persuasive. *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) (Because "check-off form did not cite any clinical test results or findings and . . . treatment notes did not report any significant limitations due to back pain, the ALJ permissibly found that it was entitled to little evidentiary weight) (internal citations omitted); *Smith v. Comm'r of Soc. Sec.,* No. 13-12759, 2015 WL 899207, at *14-15 (E.D. Mich. Mar. 3, 2015) (limited weight accorded to a physician's check-box forms, read in context, refers to a treating source's opinion of limitation).  In contrast here, the checked boxes reflect a same-time assessment of Plaintiff's condition at the time of treatment rather than an assessment of his functional limitations (Tr. 1184-85, 1188, 1273-1274, 1569, 1616-1617).  Further, while the ALJ cited the check-off forms by treating sources, he also relied on the narrative-based evidence to support the non-disability findings.  Dr. Markowicz's March 2019 findings mirror the treating observations of a normal thought content, normal memory, average intelligence, and an appropriate manner (Tr. 600-602).

Because substantial evidence supports the ALJ's finding that Plaintiff was not disabled when not engaging in substance use, the administrative findings should remain undisturbed.

3.   Dr. Park's October 2019 Assessment

Finally, Plaintiff argues the ALJ erred by failing to address Dr. Park's

opinion that Plaintiff continued to require a guardian and that his work-related

abilities were impeded by the psychological conditions.  (ECF No. 23,

PageID.1869,1874).  Plaintiff relies on 20 C.F.R. §§ 404.1520c, 416.920c,

which requires the ALJ to weigh both treating and non-treating medical opinions

based on how well they are supported by the remainder of the record.  In turn,

Defendant argues Dr. Park's statement that Plaintiff was unable to work does not

constitute a "medical opinion" and thus, the ALJ did not err in declining to discuss

it.  (ECF No. 26, PageID.1904-1905).

As a threshold matter, Plaintiff's contention that the ALJ ignored the

portions of Dr. Park's findings supporting a disability finding is without merit.

The ALJ acknowledged Dr. Park's diagnosis of bipolar disorder, ADHD, ODD,

alcohol use disorder in remission, and substance use disorder in remission (Tr. 17).

The ALJ noted "impaired personality testing," citing Dr. Park's finding that the

results were attributable to a manic episode on the day of testing (Tr. 17).  The ALJ

acknowledged Dr. Park's finding of below average capacity for immediate recall,

mental manipulation, perceptual patterning, and auditory short memory (Tr. 18).

While the other medical evidence during Plaintiff's period of sobriety, such as the

counseling records and Dr. Markowicz's March 2019 assessment, show a

significantly lesser degree of limitation, the RFC precluding work with the general public; "only occasional contact with coworkers and supervisors;" and  "no fast paced production pace work, where the pace is set by others" clearly reflects Dr. Park's findings (Tr. 16).

Plaintiff is correct the ALJ did not discuss Dr. Park's statements that Plaintiff's mother "should continue to serve as [Plaintiff's] legal guardian" or that Plaintiff's "psychological disorders seem to hamper his ability to work, both in the past, and in the present" (Tr. 1753).  However, Dr. Park's statement that Plaintiff is unemployable is not a medical opinion and thus not entitled to analysis or weight. "Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work" are "inherently neither valuable nor persuasive."  20 C.F.R. § § 1520b(c)(3)(i),416.920b(c)(3)(i).  "[W]e will not provide any analysis about how we considered such evidence in our determination or decision even under § 404.1520c."  *Id.*

Finally, even if Dr. Park's opinion that Plaintiff was unemployable were entitled to consideration, substantial evidence supports the opposite conclusion. Contrary to Dr. Park's statement that Plaintiff's employment history was sporadic and unsuccessful, Plaintiff reported to Dr. Markowicz that he worked as a dishwasher for one year and that the job ended when he moved (Tr. 599). He also told her that for two-and-a-half years he worked at Meijer as a stocker (Tr. 599).

Plaintiff's ability to hold one job for a year and another for two-and-a-half years contradicts Dr. Park's conclusion that Plaintiff was unemployable. For this reason as well, the ALJ did not err in declining to discuss, much less adopt, Dr. Park's finding that Plaintiff was not employable.

### H.    Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 23), **GRANT** Defendant's motion for summary judgment (ECF No. 26), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: 7/7/2021

/s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge